**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

**HERMAN REESE**, a citizen of Colorado, and
**JASMINN REESE**, citizen of Colorado,

Plaintiffs,

vs.

**WAL-MART STORES, INC**., a Delaware corporation with its principal place of business in Arkansas,

**WALMART, INC.,** a Delaware corporation with its principal place of business in Arkansas,

**WALMART INC**., a Delaware corporation with its principal place of business in Arkansas,

**WAL-MART NEIGHBORHOOD MARKET**, believed to be a Delaware corporation with its principal place of business in Arkansas,

**WAL-MART STORES EAST, INC**., believed to be a Delaware corporation with its principal place of business in Arkansas

Defendants.

---

**COMPLAINT FOR DAMAGES AND JURY DEMAND**

COMES NOW the Plaintiffs Herman Reese and Jasminn Reese, by and through their attorneys, and as their Complaint against the Defendants and each of them state and allege as follows:

**INTRODUCTION**

1

1. This is a product liability case arising from catastrophic and permanently disabling injuries suffered by Plaintiff HERMAN REESE caused by a defective and unreasonably dangerous "male enhancement" product called "Libido-Max," which was designed, manufactured, marketed, distributed, and sold by the Defendant. Plaintiffs bring this action against Defendants asserting injury claims arising from the design, manufacture, marketing, distribution, and sale of the subject defective Libido-Max product.

**PARTIES**

2. Injured Parties HERMAN REESE and JASMINN REESE were and are residents and citizens of the state of Colorado. HERMAN REESE and JASMINN REESE may hereinafter collectively be referred to as "Plaintiffs."

3. Defendant WAL-MART STORES, INC. was and is believed to be a Delaware corporation with its principal place of business in Arkansas and doing business in Colorado.

4. Defendant WALMART, INC. was and is believed to be a Delaware corporation with its principal place of business in Arkansas and doing business in Colorado.

5. Defendant WALMART INC. was and is believed to be a Delaware corporation with its principal place of business in Arkansas and doing business in Colorado.

6. Defendant WAL-MART NEIGHBORHOOD MARKET was and is believed to be a Delaware corporation with its principal place of business in Arkansas and doing business in Colorado. WAL-MART NEIGHBORHOOD MARKET may be a trade name of WAL-MART STORES, INC., WALMART, INC. and/or WALMART INC.

7. Defendant WAL-MART STORES EAST, INC., was and is believed to be a Delaware corporation with its principal place of business in Arkansas and doing business in Colorado.

8. At all times herein mentioned, Defendants WAL-MART STORES, INC., WALMART, INC., WALMART INC., WAL-MART NEIGHBORHOOD MARKET, and WAL-MART STORES EAST, INC. designed, developed, manufactured, tested or failed to test, inspected or failed to inspect, failed to recall, labelled, advertised, promoted, marketed,

supplied, distributed, wholesaled, and sold male enhancement products in Colorado and throughout the United States, including the subject defective Libido-Max product that gives rise to this lawsuit.

9. Defendants WAL-MART STORES, INC., WALMART, INC., WALMART INC., WAL-MART NEIGHBORHOOD MARKET, WAL-MART STORES EAST, INC. will hereinafter collectively be referred to as "WALMART" and/or "WAL-MART" and/or "Defendants."

## JURISDICTION AND VENUE

10. This Court has personal jurisdiction over Defendants because Defendants have transacted and continue to transact business in this jurisdiction and throughout Colorado, and because Defendants have committed the acts and omissions complained of herein in this jurisdiction and the State of Colorado.

11. Plaintiff claims damages in excess of $75,000 in this action, excluding costs and interest.

12. This Court is vested with jurisdiction of this action by the diversity statute, 28 U.S.C. § 1332.

13. This Court is vested with venue of this action because a substantial portion of the events or omissions giving rise to the claim occurred in this judicial district

## COMMON ALLEGATIONS

14. Plaintiff, HERMAN REESE, purchased the subject Libido-Max product at a WALMART store in Colorado Springs, Colorado in approximately January 2020.

15. The Defendants' packaging of the subject Libido-Max product described it as a "Doctor-developed" "male enhancement" product.

16. The Defendants' packaging of the subject Libido-Max product described it as "designed to maximize a man's sexual vitality" using "tried and true botanicals with targeted nutrients . . . ."

17. The Defendants' packaging of the subject Libido-Max product described it as designed to induce a "3-part physical response" including "enhanced vitality," "healthy blood flow," and a "boost [of] pleasure" during sexual activity.

18. The subject Libido-Max product was marketed, distributed, and sold as an over-the-counter product.

19. The subject Libido-Max product was marketed, distributed, and sold without a prescription.

20. Plaintiff HERMAN REESE ingested the subject Libido-Max product on two occasions between January, 2020 and March 17, 2020, in the manner described in the Defendants' product packaging.

21. On each occasion, Plaintiff HERMAN REESE did not suffer any apparent adverse effects, either during or after sexual activity.

22. Plaintiff HERMAN REESE ingested the subject Libido-Max product a third time on or about March 17, 2020, again in the manner described in the Defendants' product packaging.

23. While engaged in sexual activity on that date, Plaintiff HERMAN REESE suffered a sudden onset of severe abdominal pain, right leg cramping, and lower extremity paresthesia, numbness, and paralysis.

24. Plaintiff HERMAN REESE was emergently transported to the hospital, where he was diagnosed as having suffered a catastrophic aortic dissection.

25. Plaintiff HERMAN REESE underwent life-saving emergency surgery for his catastrophic aortic dissection and resulting compartment syndrome and multi-limb ischemia.

26. The subject Libido-Max product was designed, developed, tested (or not adequately tested), manufactured, inspected (or not adequately inspected), approved, labelled (or mislabelled), advertised, promoted, marketed, supplied, distributed, wholesaled, and sold by WALMART.

27. Plaintiff HERMAN REESE suffered catastrophic, permanent injuries as a result of his reasonable and foreseeable use of the subject Libido-Max product including but not limited to an acute abdominal aortic dissection, lower extremity compartment syndrome and limb ischemia, acute renal failure, bilateral hand digit necrosis, limb and digit amputations, tissue loss, paralysis, and paraplegia.

28. Plaintiff JASMINN REESE suffered a loss of consortium as that term is defined in law as a result of Plaintiff HERMAN REESE's reasonable and foreseeable use of the subject Libido-Max product and his resulting injuries.

29. The aforesaid events and resulting injuries and damages to Plaintiffs HERMAN REESE and JASMINN REESE were caused by the acts and omissions of the Defendants and each of them.

30. Some of the allegations herein have been made and/or may be perceived to have been made in the alternative. Plaintiffs will elect which claims and allegations they intend to pursue before the time of trial.

## CAUSES OF ACTION AGAINST ALL DEFENDANTS
## FIRST CAUSE OF ACTION
## (STRICT PRODUCTS LIABILITY)

31. Plaintiffs incorporate by reference, as though fully set forth herein, each and every allegation and statement contained in the foregoing paragraphs.

32. Plaintiffs are informed and believe, and thereon allege, that the aforementioned Libido-Max product and/or its component ingredients, were defectively designed, developed, manufactured, tested (or not adequately tested), inspected (or not adequately inspected), recalled (or not appropriately recalled), labelled (or mislabelled), advertised, promoted, marketed, supplied, distributed, wholesaled, and sold by WALMART.

33. WALMART designed, tested, manufactured, distributed, and sold the subject Libido-Max product and its component ingredients, and placed the subject Libido-Max product

and its component ingredients into the stream of commerce knowing that the subject Libido-Max product and its component ingredients would be used in their intended matter.

34. Plaintiffs are informed and believe, and thereon alleged, that the aforementioned Libido-Max product and its component ingredients were advertised, promoted, marketed, supplied, distributed, wholesaled, and sold as intended by WALMART in the regular course of business.

35. The Defendants, and each of them, knew that the subject Libido-Max product would be used without any inspection for defects.

36. It is believed that the Defendants had actual knowledge of a defect in the subject Libido-Max product.

37. At the time of Plaintiff HERMAN REESE's injury, the subject Libido-Max product was being used in a manner and fashion that was foreseeable to Defendants and in a manner it was intended to be used.

38. At the time the subject Libido-Max product left the control of Defendants, it was defective and unreasonably dangerous to a person who might reasonably be expected to use it. These defects include, but are not limited to, the conditions described in this cause of action and described elsewhere in this Complaint.

39. The subject Libido-Max product was not reasonably safe for ordinary use by foreseeable consumers such as Plaintiff HERMAN REESE. The subject product had a dangerous propensity to cause foreseeable consumers to suffer severe side effects from intended and ordinary use including irregular or rapid heart rate, sudden spikes in blood pressure, heart attacks, cardiovascular injury, including but not limited to aortic dissection, and death.

40. The overall design of the subject Libido-Max product was defective and unreasonably dangerous to foreseeable consumers who used it in its ordinary manner. The subject product was designed to contain active compounds in concentrations that posed a serious risk of severe side effects including irregular or rapid heart rate, sudden spikes in blood

6

pressure, heart attacks, cardiovascular injury, including but not limited to aortic dissection, and death.

41. The overall design of the subject Libido-Max product was defective and unreasonably dangerous insofar as it included unsafe concentrations of such compounds that posed a serious risk of severe side effects to foreseeable users including irregular or rapid heart rate, sudden spikes in blood pressure, heart attacks, cardiovascular injury, including but not limited to aortic dissection, and death.

42. The overall design of the subject Libido-Max product was defective and unreasonably dangerous insofar as it included undetermined or variable concentrations of such compounds that posed a serious risk of severe side effects to foreseeable users including irregular or rapid heart rate, sudden spikes in blood pressure, heart attacks, cardiovascular injury, including but not limited to aortic dissection, and death.

43. The overall design of the subject Libido-Max product was defective and unreasonably dangerous insofar as it subjected foreseeable users with pre-existing cardiovascular conditions to serious risk of severe side effects including irregular or rapid heart rate, sudden spikes in blood pressure, heart attacks, cardiovascular injury, including but not limited to aortic dissection, and death.

44. The subject Libido-Max product failed to incorporate other designs that would have minimized the chances of severe side effects to foreseeable users including irregular or rapid heart rate, sudden spikes in blood pressure, heart attacks, cardiovascular injury, including but not limited to aortic dissection, and death.

45. The subject Libido-Max product was defective and unreasonably dangerous in its manufacture insofar as it was manufactured with active compounds in concentrations that posed a serious risk of severe side effects including irregular or rapid heart rate, sudden spikes in blood pressure, heart attacks, cardiovascular injury, including but not limited to aortic dissection, and death.

46.     The subject Libido-Max product was defective and unreasonably dangerous in its manufacture insofar as it was manufactured with unsafe concentrations of such compounds that posed a serious risk of severe side effects to foreseeable users including irregular or rapid heart rate, sudden spikes in blood pressure, heart attacks, cardiovascular injury, including but not limited to aortic dissection, and death.

47.     The subject Libido-Max product was defective and unreasonably dangerous in its manufacture insofar as it was manufactured with undetermined or variable concentrations of such compounds that posed a serious risk of severe side effects to foreseeable users including irregular or rapid heart rate, sudden spikes in blood pressure, heart attacks, cardiovascular injury, including but not limited to aortic dissection, and death.

48.     The subject Libido-Max product was defective and unreasonably dangerous in its manufacture insofar as it was manufactured in a fashion that did not conform with Defendants' manufacturing specifications.

49.     The subject Libido-Max product lacked adequate and sufficient information, instructions, and warnings about the risks, dangers, and harms presented by the subject Libido-Max product as described herein and the reasonable means to reduce such risks, dangers, and harms.

50.     At the time Plaintiff used the subject Libido-Max product in a reasonably foreseeable manner, the product failed to perform as safely as an ordinary consumer would have expected, failed to conform with its manufacturing specifications, failed to contain adequate warnings, and its design, manufacture, and/or lack of warnings were substantial factors in causing the catastrophic injuries suffered by Plaintiff HERMAN REESE.

51.     As a direct and proximate result of defects with the subject Libido-Max product and the wrongful conduct, acts, and omissions of the Defendants, Plaintiff, HERMAN REESE, sustained severe and permanent injury and further has incurred extensive medical costs and procedures in being treated for said injuries, has incurred lost wages, and further has and will in the future be prevented from attending his usual, normal, and customary occupation and

customary affairs of life and also sustained and will continue to sustain significant pain and suffering and disability.

52. As a direct and proximate result of the afore-mentioned injuries suffered by Plaintiff JASMINN REESE's spouse, HERMAN REESE, Plaintiff JASMINN REESE has been deprived, continues to be deprived, and expects to be deprived in the future, of her spouse's companionship, affection, love, conjugal fellowship, physical assistance in maintaining the family home, and comfort for a non-determinable length of time, which deprivation has caused, continues to cause, and in the future is expected to cause Plaintiff to suffer emotional distress, loss of earning capacity, past, present, and future, and other injuries, the full extent of which has not yet been ascertained, but which will be stated according to proof at trial.

53. As a further direct and proximate result of the aforesaid conduct of WALMART, Plaintiff JASMINN REESE has sustained a loss of consortium, love, society, comfort, and affection with respect to Plaintiff HERMAN REESE and has thereby sustained pecuniary loss in a sum within the jurisdictional limits of the Court, which will be stated according to proof at trial.

54. As a direct and proximate result of defects with the subject Libido-Max product and the wrongful conduct, acts, and omissions of the Defendants, Plaintiffs have suffered injuries, damages, and losses as alleged herein.

**SECOND CAUSE OF ACTION**

**(NEGLIGENCE)**

55. Plaintiffs incorporate by reference, as though fully set forth herein, each and every allegation and statement contained in the foregoing paragraphs.

56. At all relevant times, WALMART was and is engaged in the business of designing, developing, manufacturing, testing, analyzing, inspecting, labelling, packaging, preparing, handling, advertising, promoting, marketing, recommending, supplying, furnishing,

distributing, wholesaling, retailing, selling, and placing into the stream of commerce the subject Libido-Max product and other similar products.

57. WALMART, including its employees, agents, directors, officers, stockholders, partners, and associates, had a legal duty to conform their conduct in accordance with the law and that of a reasonable person, which includes adequately and properly managing and operating their business and their manufacturing, design, warning, distribution, wholesale, and retail operations and activities; adequately and properly training and supervising their employees and agents, including their designers, inspectors, quality control agents, and other manufacturing, testing, distribution, and delivery personnel; properly designing, testing, approving, manufacturing, inspecting, distributing, marketing, and selling the subject Libido-Max Product; properly including appropriate information, instructions, and warnings with and relating to the subject Libido-Max Product; timely and appropriately recalling and notifying potential users of recalls of the risks and harms of the subject Libido-Max product where appropriate and where otherwise required by law; and acting without negligence, conscious disregard, despicable, or other wrongful conduct.

58. WALMART negligently designed, tested, approved, manufactured, inspected, distributed, and sold the subject Libido-Max product, and/or component ingredients thereof, insofar as they failed to exercise reasonable care to prevent the subject Libido-Max product and/or its component ingredients from creating an unreasonable risk of harm to persons who might reasonably be expected to use them in an expected or reasonably foreseeable manner.

59. WALMART, including their employees, agents, directors, officers, stockholders, partners, and associates, breached their duties and failed to conform their conduct in accordance with the law and that of a reasonable person, causing injuries, damages, and losses to the Plaintiffs.

60. At the time of the design and manufacture of the subject Libido-Max product, WALMART was aware or should have been aware that the subject product contained active compounds known to cause severe side effects and to pose substantial risks of serious injury

and death from ordinary and foreseeable use but inserted the subject Libido-Max product into the stream of commerce anyway, without designing out the defects, guarding against them, or providing reasonable warnings to consumers such as Plaintiff HERMAN REESE.

61. At the time of the design and manufacture of the subject Libido-Max product, WALMART was aware or should have been aware that the subject product contained such active compounds at unsafe concentrations known to cause severe side effects and to pose substantial risks of serious injury and death from ordinary and foreseeable use but inserted the subject Libido-Max product into the stream of commerce anyway, without designing out the defects, guarding against them, or providing reasonable warnings to consumers such as Plaintiff HERMAN REESE.

62. At the time of the design and manufacture of the subject Libido-Max product, WALMART was aware or should have been aware that the subject product was not manufactured in conformity with manufacturing specifications insofar as it contained unsafe concentrations of active compounds known to cause severe side effects and to pose substantial risks of serious injury and death from ordinary and foreseeable use that were not included in the specifications but inserted the subject Libido-Max product into the stream of commerce anyway, without designing out the defects, guarding against them, or providing reasonable warnings to consumers such as Plaintiff HERMAN REESE.

63. At the time of the design and manufacture of the subject Libido-Max product, WALMART was aware or should have been aware that the subject product lacked adequate and sufficient information, warnings, and instructions about the risks, dangers, and harms presented by the subject Libido-Max product as described herein and the reasonable means to reduce such risks, dangers, and harms.

64. At the time of the design and manufacture of the subject Libido-Max product, WALMART was aware or should have been aware of the defects with the subject Libido-Max product but inserted it into the stream of commerce anyway, without designing out the defects,

guarding against them, or providing reasonable warnings and instructions to consumers such as Herman Reese.

65. At the time of the design and manufacture of the subject Libido-Max product, WALMART was aware or should have been aware of defects with the subject Libido-Max product that required them to initiate and conduct an adequate and timely recall of the product but they failed to initiate or conduct such a recall.

66. At the time of the design and manufacture of the subject Libido-Max product, WALMART was aware or should have been aware of alternative designs that were technologically and economically feasible but chose not to incorporate these alternative designs.

67. WALMART'S knowledge as described in this Complaint is believed to be reflected in their respective meeting minutes, internal communications and memoranda, reports of other incidents involving their products, and the results of tests, studies, and analyses conducted by them and others.

68. WALMART acted unreasonably and was negligent in designing, manufacturing, and marketing a product that presented a substantial and unreasonable risk of injury to consumers who used it in a reasonably foreseeable manner, including Herman Reese.

69. WALMART acted unreasonably and was negligent in failing to provide adequate and sufficient information, instructions, and warnings as to their product that presented a substantial and unreasonable risk of injury to consumers who used it in a reasonably foreseeable manner, including Plaintiff, HERMAN REESE.

70. WALMART acted unreasonably and was negligent in failing to initiate and conduct an adequate and timely recall of their product that presented a substantial and unreasonable risk of injury to consumers who used it in a reasonably foreseeable manner, including Plaintiff, HERMAN REESE.

71. As a direct and proximate result of the Defendants' negligence as described herein, Plaintiff, HERMAN REESE, sustained severe and permanent injury and further has

incurred extensive medical costs and procedures in being treated for said injuries, has incurred lost wages, and further has and will in the future be prevented from attending his usual, normal, and customary occupation and customary affairs of life and also sustained and will continue to sustain significant pain and suffering and disability.

72. As a direct and proximate result of the afore-mentioned injuries suffered by Plaintiff JASMINN REESE's spouse, HERMAN REESE, Plaintiff JASMINN REESE has been deprived, continues to be deprived, and expects to be deprived in the future, of her spouse's companionship, affection, love, conjugal fellowship, physical assistance in maintaining the family home, and comfort for a non-determinable length of time, which deprivation has caused, continues to cause, and in the future is expected to cause Plaintiff to suffer emotional distress, loss of earning capacity, past, present, and future, and other injuries, the full extent of which has not yet been ascertained, but which will be stated according to proof at trial.

73. As a further direct and proximate result of the aforesaid conduct of Defendants WALMART, and each of them, Plaintiff JASMINN REESE has sustained a loss of consortium, love, society, comfort, and affection with respect to Plaintiff HERMAN REESE and has thereby sustained pecuniary loss in a sum within the jurisdictional limits of the Court, which will be stated according to proof at trial.

74. As a direct and proximate result of the Defendants' negligence, Plaintiffs have suffered injuries, damages, and losses as alleged herein.

## THIRD CAUSE OF ACTION
## (BREACH OF WARRANTIES)

75. Plaintiffs incorporate all other allegations in this complaint as if set forth herein.

74. WALMART knew the particular purposes for which the subject Libido-Max product and its components were required and were to be used, and that purchasers and users

13

such as the Plaintiff would rely on WALMART's skill or judgment in designing, testing, manufacturing, and furnishing goods suitable for such purposes and uses.

75. The subject Libido-Max product, including its component parts, was not free from defects or fit for the purpose for which it was to be used, and was in fact defectively designed, manufactured, and distributed and imminently dangerous to occupants and users, and in fact did cause, serious and permanent injuries to the Plaintiff while being used in a manner reasonably foreseeable to WALMART. As a result, the subject Libido-Max was unsafe and dangerous for use by the consumer and in particular by the Plaintiff.

76. WALMART warranted to purchasers and foreseeable users of the subject Libido-Max product, including the Plaintiffs, that the subject Libido-Max product was fit for the purpose for which it was intended to be used and was free from manufacturing and design defects.

77. WALMART warranted to purchasers and users of the subject Libido-Max product, including the Plaintiffs, that the subject Libido-Max product was suitable for its intended use, was of merchantable quality, and would provide adequate protection for its intended and foreseeable use. The warranty was not limited and extended to future performance.

78. The subject Libido-Max product was defective and was not of merchantable quality and was not fit for its intended purpose in that it was capable of causing, and, in fact, did cause serious and permanent injuries to the Plaintiff, while being used in a manner reasonably foreseeable to WALMART.

79. As a direct and proximate result of each breach of WALMART's express and implied warranties, Plaintiffs suffered the injuries and damages as herein alleged.

## FOURTH CAUSE OF ACTION
## (PREMISES LIABILIBTY ACT)

80.     Plaintiffs incorporate by reference, as though fully set forth herein, each and every allegation and statement contained in the foregoing paragraphs.

81.     In the alternative only, and solely in an abundance of caution, Plaintiffs proceed and claim against Defendants pursuant to the provisions of Colorado's Premises Liability Act, C.R.S. § 13-21-115.

82.     At all relevant times, the provisions of Colorado's Premises Liability Act, C.R.S. § 13-21-115, were in effect.

83.     At all relevant times, WALMART was a "landowner" of the subject WALMART store where WALMART marketed and sold the subject Libido-Max product to Plaintiff, Herman Reese.

84.     At all relevant times, Plaintiff Herman Reese an "invitee" at Defendants' WALMART store as that term is defined by statute. *See* C.R.S. § 13-21-115(5)(a).

85.     At all relevant times, WALMART owed Plaintiff, Herman Reese, a duty of reasonable care to protect against dangers of which it actually knew or should have known; to exercise reasonable care with respect to and to warn of dangers that it created and of which it actually knew; and to refrain from causing injury by willful or deliberate conduct, including conduct characterized as "gross negligence" and/or "willful and wanton conduct" under applicable law. *See* C.R.S. § 13-21-115(3)(a)-(c), (3.5).

86.     At all relevant times, WALMART breached its legal duties as described elsewhere herein.

87.     At all relevant times, WALMART'S breaches of its legal duties included but were not limited to distributing, marketing, and selling the subject Libido-Max product when it knew or should have known that the product was unreasonably dangerous and defective in its design and/or manufacture, including to consumers with a preexisting medical condition, and when it knew or should have known that the subject Libido-Max product lacked adequate and sufficient

15

information, instructions, and warnings about the risks, dangers, and harms presented by the subject Libido-Max product as described herein and the reasonable means to reduce such risks, dangers, and harms.

88. As a direct and proximate result of WALMART'S breaches of its legal duties, Plaintiff, HERMAN REESE, sustained severe and permanent injury and further has incurred extensive medical costs and procedures in being treated for said injuries, has incurred lost wages, and further has and will in the future be prevented from attending his usual, normal, and customary occupation and customary affairs of life and also sustained and will continue to sustain significant pain and suffering and disability.

89. As a direct and proximate result of the afore-mentioned injuries suffered by Plaintiff JASMINN REESE's spouse, HERMAN REESE, Plaintiff JASMINN REESE has been deprived, continues to be deprived, and expects to be deprived in the future, of her spouse's companionship, affection, love, conjugal fellowship, physical assistance in maintaining the family home, and comfort for a non-determinable length of time, which deprivation has caused, continues to cause, and in the future is expected to cause Plaintiff to suffer emotional distress, loss of earning capacity, past, present, and future, and other injuries, the full extent of which has not yet been ascertained, but which will be stated according to proof at trial.

90. As a further direct and proximate result of the aforesaid conduct of WALMART, Plaintiff JASMINN REESE has sustained a loss of consortium, love, society, comfort, and affection with respect to Plaintiff HERMAN REESE and has thereby sustained pecuniary loss in a sum within the jurisdictional limits of the Court, which will be stated according to proof at trial.

91. As a direct and proximate result of defects with the subject Libido-Max product and the wrongful conduct, acts, and omissions of WALMART, Plaintiffs have suffered injuries, damages, and losses as alleged herein.

## FIFTH CAUSE OF ACTION
## (LOSS OF CONSORTIUM)

92. Plaintiffs incorporate herein by reference, as though fully set forth at length, each and every allegation and statement contained in the foregoing paragraphs.

93. Plaintiffs HERMAN REESE and JASMINN REESE were lawfully married at all times relevant to this action and are husband and wife.

94. As alleged above, and as a result of the misconduct of WALMART, Plaintiff HERMAN REESE sustained severe and permanent injuries and damages.

95. As a direct and proximate result of the afore-mentioned injuries suffered by Plaintiff JASMINN REESE's spouse, HERMAN REESE, Plaintiff JASMINN REESE has been deprived, continues to be deprived, and expects to be deprived in the future, of her spouse's companionship, affection, love, conjugal fellowship, physical assistance in maintaining the family home, and comfort for a non-determinable length of time, which deprivation has caused, continues to cause, and in the future is expected to cause Plaintiff to suffer emotional distress, loss of earning capacity, past, present, and future, and other injuries, the full extent of which has not yet been ascertained, but which will be stated according to proof at trial.

96. As a further direct and proximate result of the aforesaid conduct of WALMART, Plaintiff JASMINN REESE has sustained a loss of consortium, love, society, comfort, and affection with respect to Plaintiff HERMAN REESE and has thereby sustained pecuniary loss in a sum within the jurisdictional limits of the Court, which will be stated according to proof at trial.

**CAUSATION & DAMAGES**
**(Against All Defendants)**

97. Plaintiffs incorporate all other allegations in this complaint as if set forth herein.

98. As a direct and proximate result of the defective and unreasonably dangerous condition of the subject defective Libido-Max product and the acts and omissions of WALMART, Plaintiffs have incurred and seeks the following general and special damages:

A. Pain and suffering, mental anguish, and emotional distress, past and future;

17

B. Reasonable and necessary medical, hospital, and rehabilitation care and services, nursing care and services, medications, therapies and other expenses, past and future, including special medical damages;

C. Inconvenience;

D. Loss of enjoyment of life and impairment of qualify of life;

E. Physical impairment;

F. Physical disfigurement; and

G. All such other monetary relief and compensatory damages as permissible at common law and by statute and to which Plaintiffs are entitled

**WHEREFORE**, Plaintiffs pray for and demand an award of damages to be fixed against the Defendants by the trier of fact in a reasonable amount. Additionally, Plaintiffs ask for the costs of this action, reasonable attorney fees, all pre-judgment and post-judgment interest as provided by law, and for all such other relief to which the are legally entitled and as the Court deems appropriate.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

Respectfully submitted this 17th day of March, 2022.

s/ *Paul J. Komyatte*
Paul J. Komyatte, #22750
David P. Mason, #41333
1536 Cole Blvd., Suite 300
Lakewood, CO  80401
Office:  (720) 975-TKLF (8553)
Fax:     (720) 528-8072
paul@komyattelawfirm.com
dave@komyattelawfirm.com

ATTORNEYS FOR PLAINTIFFS

18